UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT MICHAEL WHITTAL | CIVIL ACTION |
| VERSUS | NO: 07-4181 |
| SPECIALTY DIVING OF LOUISIANA, INC., ET AL. | SECTION: R(5) |

**ORDER AND REASONS**

Before the Court is cross-defendant's Specialty Offshore, Inc.'s motion for reconsideration of the Court's October 22, 2008 Order granting Frisco Construction Co., Inc.'s unopposed motion for summary judgment. For the following reasons, the Court DENIES the motion.

I. **Background**

This case arises out of a diving accident that occurred on July 17, 2007. On that day, plaintiff Robert Whittal, an employee of Specialty Offshore, Inc., allegedly sustained injuries when his air delivery system aboard a barge failed while

he was underwater performing diving operations. (Pl.'s Complaint at ¶¶IV-VII, R. Doc. 1). Denbury Onshore, LLC, had provided for the barge and diving crew to be at the site so that the divers could lay pipeline. (R. Doc. 34-6). Denbury had contracted with Frisco Construction Co., Inc., to provide the barge and Specialty Offshore, Inc. to provide the diving crew. (R. Doc. 34-6).

On August 17, 2007, Whittal sued Specialty Diving of Louisiana, Inc.,[1] Frisco, and Denbury Resources, Inc. under the Jones Act and general maritime law. (Pl.'s Complaint at ¶¶XII-XXIV, R. Doc. 1). Frisco filed cross-claims against Specialty Diving and Denbury Onshore. (R. Docs. 21 & 24). On August 1, 2008, Frisco moved for summary judgment against Specialty on the grounds that the Denbury/Specialty Master Service Agreement contained pass-through indemnity obligations assumed by Specialty in favor of Frisco. Specialty did not file an opposition, and the Court granted Frisco's motion. (R. Doc. 46).

Specialty moved to reconsider the Court's Order within 10

---

[1] Plaintiff incorrectly named Specialty Diving of Louisiana, Inc. as a party, when the relevant company is actually Specialty Offshore, Inc. Specialty Offshore, Inc. has since been substituted as a party. (R. Doc. 69). Although Specialty Diving actually filed the instant motion to reconsider, the Court will consider it as filed on behalf of Specialty Offshore, Inc. Specialty Offshore filed the reply memorandum. The Court will refer to the companies as "Specialty" unless it is relevant to distinguish between the two.

days, and thus this Court will consider the motion as filed under Rule 59(e). Specialty asserts that Frisco's summary judgment motion went unopposed because Specialty's counsel was appointed to defend it only against the Jones Act and maritime law claims of plaintiff, and not the contractual claims asserted by Frisco. Specialty now asserts several defenses to Frisco's claims. Frisco opposes the motion.

**II. Legal Standard**

A district court has considerable discretion to grant or deny a motion for reconsideration. *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). A court's reconsideration of an earlier order is an extraordinary remedy, which should be granted sparingly. *See Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998), *aff'd*, 182 F.3d 353 (5th Cir. 1999); *Bardwell v. George G. Sharp, Inc.*, Nos. Civ. A. 93-3590, 93-3591, 1995 WL 517120, at *1 (E.D. La. Aug. 30, 1995). The Fifth Circuit has held that a motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). A Rule 59(e) motion "serve[s] the narrow purpose of allowing a party to

correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 479 (quotation omitted). The Court must "strike the proper balance" between the need for finality and "the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co.*, 6 F.3d at 355. To succeed on a motion for reconsideration, a party must "'clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487*, 328 F.3d 818, 820 (5th Cir. 2003)).

## III. Discussion

In its summary judgment Order, the Court found that Denbury Resources's agreement with Specialty contained a "pass-through" indemnity obligation which required Specialty to indemnify Frisco, as a contractor of Denbury Onshore LLC, for claims by Specialty's employees. The provision provides:

> CONTRACTOR shall be liable in any case of illness, injury or death suffered by the personnel of all members of CONTRACTOR GROUP . . . REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY ANY MEMBER OF COMPANY GROUP'S NEGLIGENCE OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING . . . THE UNSEAWORTHINESS OF ANY VESSEL . . . and CONTRACTOR shall release, defend, protect, indemnify and hold harmless all members of COMPANY GROUP from and against any loss, cost, claim .

4

. .

(R. Doc. 34-3 at §7.1(b)). The term "CONTRACTOR" refers to Specialty. (R. Doc. 34-3). The agreement defines "COMPANY GROUP" as Denbury Resources Inc. "and its parent, subsidiary and affiliated companies . . . and all of their officers, directors, employees, agents, assigns, invitees, coventurers, representatives, *other contractors* . . ." (R. Doc. 34-3 at §7.1(a)) (emphasis added). The Court found that Frisco was an "other contractor" protected under the agreement, since it also contracted with Denbury. (*See* R. Doc. 34-2).

Specialty presents four arguments as to why the Court should reconsider its order granting Frisco's motion for summary judgment. None has merit.

Specialty's first argument, that Specialty Diving is not bound by the provisions of the contract between Denbury Resources and Specialty Offshore, is moot now that Specialty Offshore has been substituted as a party in place of Specialty Diving. (*See* R. Doc. 69).

Specialty next argues that its agreement with Denbury Resources, Inc. does not indemnify Frisco since in its April 25, 2007 agreement, Frisco contracted with Denbury Onshore, LLC, an entity that was not in existence at the time of Specialty's January 14, 2002 agreement with Denbury Resources. Frisco

5

contends that Specialty's argument fails because Denbury Onshore was the surviving entity of a 2004 merger involving Denbury Resources and Denbury Holdings, Inc.

Denbury Resources' 2004 merger into Denbury Onshore does not end Specialty's 2002 contractual obligations.  Both Denbury Resources and Denbury Onshore were formed in Delaware.  Delaware corporation law provides that a new corporation resulting from a merger "possess[es] all the rights, privileges, powers and franchises . . . [and is] subject to all the restrictions, disabilities and duties of each of such corporations so merged or consolidated." 8 Del. C. § 259(a).  The merger agreement also provides that "the Surviving Entity (Denbury Onshore) shall succeed to and assume all the rights and obligations of Old Denbury (Denbury Resources) in accordance with the DGCL and the DLLCA." (R. Doc. 80-1, Merger Agreement at ¶1.1(a)).  Accordingly, pursuant to the merger, Denbury Resources' right to indemnification from Specialty became Denbury Onshore's right to indemnification from Specialty.  Because the right to indemnification included indemnification for Denbury's contractors, Specialty was required to indemnify Frisco as a contractor of Denbury.[2]

---

[2]Denbury also argues that because the provision in the Frisco/Denbury contract providing that the agreement applied to

Specialty next contends that under Fifth Circuit precedent, Frisco must exhaust its insurance procurement requirements before contractual indemnity provisions can be invoked. Specialty relies on *Ogea v. Loffland Bros. Co.*, 622 F.2d 186 (5th Cir. 1980), and its progeny. In *Ogea*, the Court held that, under Louisiana law, contractual indemnity provisions must be read in conjunction with contractual provisions requiring the acquisition of insurance. *Id.* at 190. There, two companies, Loffland and Phillips, agreed to indemnify each other against claims by the other company's employees. *Id.* at 188. Thus, Phillips agreed to indemnify Loffland against all claims by Phillips employees, and Loffland agreed to indemnify Phillips against all claims by Loffland employees. In addition, the contract required Loffland to obtain $500,000 in comprehensive general liability insurance naming Phillips as an additional assured. *Id.* Reading these provisions together, the Court found that Phillips' agreement to indemnify Loffland against claims by Phillips employees did not come into play until after the $500,000 insurance policy was exhausted. *Id.* at 190. Since the *Ogea* decision, the Fifth

---

Denbury affiliates was checked, but not initialed, the agreement does not apply to Denbury Onshore affiliates. But because Denbury Resources is not an affiliate of Denbury Onshore, but one of the companies that merged into Denbury Onshore, whether this provision was properly initialed is irrelevant.

7

Circuit has continued to read similar agreements to mean that "additional assured" coverage must be exhausted before a company's indemnity responsibility comes into play. *See Tullier v. Halliburton Geophysical Services, Inc.*, 81 F.3d 552, 554 (5th Cir. 1996); *Woods v. Dravo Basic Materials Co., Inc.*, 887 F.2d 618 (5th Cir. 1989); *Klepac v. Champlin Petroleum Co.*, 842 F.2d 746 (5th Cir. 1988); *In re Diamond Services,* 281 F.3d 1279 (5th Cir. 2001)(unpublished).

Unlike the clauses in these cases, however, the insurance provision in the contract between Frisco and Denbury explicitly limits the extent to which Denbury may be named as an additional assured on Frisco's policy. The provision provides:

> 8. INSURANCE: CONTRACTOR [Frisco] shall purchase and maintain in full force and effect, with underwriters approved by the COMPANY [Denbury] (which approval shall not be reasonably withheld), the following policies of insurance, which will be primary as to any other valid and existing policies of insurance of COMPANY. All such policies shall name all members of COMPANY GROUP as additional assureds, *but only to the extent of CONTRACTOR's indemnification obligations set forth in this agreement* and shall waive all rights of subrogation by the underwriters against all members of COMPANY GROUP.

(R. Doc. 33-3 at ¶8) (emphasis added). Thus Frisco was required to name Denbury, and as a member of the COMPANY GROUP, Specialty, as additional assureds only for claims by Frisco employees — the claims against which it was required to indemnify the COMPANY

8

GROUP. In contrast, in *Orea*, Loffland was required to procure comprehensive general liability insurance, which would cover claims by both Loffland and Phillips employees. The agreement does not require Frisco to procure insurance that would cover the employees of Denbury or its contractors. Because the claim is by a Specialty employee, not a Frisco employee, Frisco was not required to exhaust its insurance proceeds before receiving indemnification from Specialty.

The Court's construction of the contract is bolstered by the Fifth Circuit's reasoning in *Marquette Transportation Company, Inc. v. Louisiana Machinery Company, Inc.*, 367 F.3d 398 (5th Cir. 2004). There, the Fifth Circuit studied an agreement providing both an indemnity clause and an insurance requirement. Unlike the insurance requirements in *Tullier* and *Orea*, the insurance requirement in *Marquette* did not require that the other party be named as an "additional insured" on the coverage. *Id.* at 407. The court found this fact to be critical and held that the insurance was not required to be exhausted before the indemnity provision came into play. *Id.* The court explained that the *Marquette* insurance requirement was "designed to provide a solvent, deep pocket for any indemnity obligations that may eventuate between the parties," not to provide primary coverage for one company. *Id.*

9

Here, the Frisco/Denbury contract requires the COMPANY GROUP to be named as an additional assured, but "only to the extent of CONTRACTOR'S indemnification obligations set forth in this Agreement." (R. Doc. 33-3 at ¶8). Denbury and its contractors are thus only additional assureds with regard to Frisco's contractual obligation to indemnify its employees. As in *Marquette*, the insurance requirement was intended to provide a "solvent, deep pocket" for Frisco's indemnity obligations, not to provide primary insurance coverage to Denbury for its own employees and contractors. Because the accident involved a Specialty employee, not a Frisco one, Frisco was not required to exhaust its insurance proceeds before receiving indemnification from Specialty.

Specialty presents a fourth argument regarding arbitration in its reply brief. Specialty contends that if this Court holds that Frisco was a party to the Specialty/Denbury Resources agreement, the agreement obligates Frisco to resolve the indemnification dispute through arbitration. That Specialty raised this argument for the first time in its reply brief, *on a reconsideration motion*, is grounds alone to reject the argument. *Cf. Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008). Specialty's argument also substantively fails. This Court has not held that Frisco was a party to the agreement

10

between Specialty and Denbury, but rather, that the agreement provides protection to Frisco as an "other contractor" of Denbury. As such, Frisco is not bound by the agreement's arbitration provision.

In sum, Specialty has not shown that this Court committed a manifest error of law or fact. Reconsideration of the summary judgment order is not warranted.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES Specialty's motion for reconsideration.

New Orleans, Louisiana, this <u>3rd</u> day of April, 2009

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE